### IBBS v. ARCHER.

(Circuit Court of Appeals, Third Circuit. February 8, 1911.)

No. 1,445 (47).

1. APPEAL AND ERROR (§ 324*)—NECESSARY PARTIES—SUMMONS AND SEVERANCE.

    In the federal courts, where there is a joint judgment or decree against several defendants, in a writ of error or an appeal from such judgment or decree all the defendants must join, unless it be shown that against those not joining some proceeding in the nature of a summons in severance has been taken, or that due notice has been served upon them by the defendant taking the appeal, and that such defendants have refused to join therein.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1806–1809; Dec. Dig. § 324.*

    When summons and severance of parties on appeal or writ of error is authorized or required, see note to City of Detroit v. Guaranty Trust Co. of New York, 93 C. C. A. 608.]

---

2. APPEAL AND ERROR (§ 324*)—NECESSARY PARTIES—JOINT DECREE.
    In a suit in equity against a number of defendants to determine their several interests, if any, in a judgment, and to obtain its satisfaction, a decree granting such relief is joint in substance, and unless there is a summons and severance, or notice and refusal, all the defendants must join in an appeal therefrom.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1806–1809; Dec. Dig. § 324.*]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in equity by F. Morse Archer, substituted receiver of the American Alkali Company, against Thomas Pegram, Tyson Ibbs, and others. Decree for complainant, and defendant Ibbs appeals. On motion to dismiss appeal. Motion granted.

See, also, 149 Fed. 515.

Martin V. Bergen, Jr., and A. B. Stoughton, for appellant.
Reynolds D. Brown and Malcolm Lloyd, Jr., for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. In November, 1905, Arthur K. Brown, surviving receiver of the American Alkali Company, filed a bill in the court below against Thomas Pegram, A. R. Harvey and Ruth L. Harvey, alien subjects of the King of Great Britain, residing in Liverpool, England, the Commercial Development Corporation, Limited, a corporation organized under the laws of Great Britain and resident thereof, and E. J. Walker, receiver of said corporation and an alien subject of the King of Great Britain, and Tyson Ibbs, an alien subject of the King of Great Britain, residing in Liverpool, England.

The allegations of the bill, briefly stated, are, that the American Alkali Company was a corporation duly organized under the laws of the state of New Jersey, in 1899; that the Commercial Development Corporation, Limited, is a corporation organized under the laws of Great Britain, and a resident thereof; that E. J. Walker is receiver of the said Commercial Development Corporation, Limited, and is a subject of the King of Great Britain; that in September, 1902, Arthur K. Brown and Henry I. Budd were duly appointed receivers of the American Alkali Company, in the Circuit Court of the United States for the District of New Jersey; that prior to the said receivership, the American Alkali Company had given two notes to the Commercial Development Corporation for $30,000 and $20,000, respectively, as part consideration for certain patent rights purchased by the Alkali Company from the Commercial Corporation. These and subsequent transactions were carried on between the two by A. R. Harvey, a holder of a large majority of the stock of the Commercial Corporation, and W. W. Gibbs, president of the Alkali Company. In consequence of subsequent financial embarrassments, the Commercial Corporation borrowed from Thomas Pegram, one of the defendants, £10,000, and gave as collateral security therefor the two notes above mentioned of the Alkali Company. On these notes, a judgment

*For other cases see same topic &.§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amounting to $52,887.45 was obtained by Pegram against the Alkali Company, in the Circuit Court of the United States for the Eastern District of Pennsylvania, in 1903. Subsequently upon his demand, additional collateral was given to Pegram, consisting, among other securities, of three notes, each for the sum of $15,000, made by W. W. Gibbs, president of the Alkali Company, to the order of A. R. Harvey, who, as stated by the court below, claimed ownership in one of these notes, dated August 19, 1901, and which he claims he assigned to Mrs. Harvey, who assigned it to her brother, one Tyson Ibbs, one of the defendants. Afterwards, in order to secure possession of these three notes, Gibbs substituted other securities, among which was a large number of shares of the Chloride Electrical Company. This stock having been substituted by Pegram as collateral security for the three notes returned by him to Gibbs, was sold by Pegram, he realizing from the sale thereof, £6,000.

The prayer of the bill was that the court might fix the true amount for which the defendant, Thomas Pegram, was entitled to recover and hold for his own use, in the judgment of $52,000 recovered by him against the American Alkali Company, and how much for the benefit of the defendant, A. R. Harvey, or the defendant Ruth L. Harvey, or the defendant Commercial Development Corporation, Limited, or its receiver, or some of them, and that the court might decree that the complainant, as receiver of the American Alkali Company, is entitled, upon a distribution of the fund, to set off as against so much of the judgment of $52,000 as the defendant, Pegram, holds as trustee for any of the other defendants, certain amounts in the way of equitable or legal set-offs claimed by complainant against such defendants.

After the filing of the bill, under the terms of a settlement made by complainant with Pegram, complainant received from Pegram an assignment of the equity of the Commercial Development Corporation in the notes in suit, upon the payment to him of a sum agreed upon. The Commercial Development Corporation being, as claimed by counsel for complainant, eliminated as a factor by the acquisition by complainant of any claim that it had on the notes, the only question left open was, whether "any one else, Mrs. Harvey for example, had any higher rights than the Commercial Development Corporation, and the controversy was therefore reduced to the point, whether Mrs. Harvey could establish a claim against the American Alkali Company, higher than that of the Commercial Development Corporation," Harvey and his wife in their answer having claimed an ownership or equitable interest in one of the Gibbs notes.

Answers of all the original defendants having been filed some time thereafter, Mrs. Harvey disclaimed any interest in the said note, averring that she had assigned and transferred all her interest in the said note and in said controversy, to her brother, Tyson Ibbs, in payment of a previous indebtedness. Thereupon, in January, 1909, the complainant, by an amended and supplemental bill, made Tyson Ibbs a party defendant.

Much testimony was taken and many questions of law and fact were submitted to the court below, and were passed upon by it in a well-

considered opinion.   In its decree, the court, after numerous findings of fact,

"ordered and decreed that neither defendant Thomas Pegram, defendant A. R. Harvey, defendant Ruth L. Harvey, nor defendant Tyson Ibbs, has any just claim to any portion of the judgment aforesaid, obtained by defendant Thomas Pegram against the American Alkali Company, and that no one of said defendants is entitled to be subrogated to any interest therein.  And it further appearing to the court that the American Alkali Company, or its receiver, has acquired all the interest of the Commercial Development Corporation, Limited, in said judgment, it is further ordered and decreed that the judgment aforesaid shall be satisfied by an entry of the clerk of the court endorsed thereon, pursuant to this decree."

From this decree, an appeal was taken by Tyson Ibbs alone, and it is now suggested to this court that the said appeal should be dismissed, for the reason that it appears by the record that the said decree was against several defendants, and that the appeal is prosecuted by only one of them, and that it does not appear by the record, or otherwise, that there was, as to the other defendants, or any of them, any proceeding for a severance, or any due notice to the other defendants, or any of them, by which, on their refusal to join in such appeal, they would thereafter be estopped.

It is well settled in the jurisprudence of the United States courts, at least, that where there is a joint judgment or decree against several defendants, in a writ of error or an appeal from such decree, all the defendants must join, unless it be shown that against those not joining, some proceeding in the nature of a summons in severance has been taken, or that due notice has been served upon them by the defendant taking the appeal, and that such defendants have refused to join therein.   That this is a part of the substantive law of procedure, and is founded upon both reason and authority, is well shown in the opinion of the Supreme Court in Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953, cited and quoted in Hardee v. Wilson, 146 U. S. 179, 181, 13 Sup. Ct. 39, 40, 36 L. Ed. 933.   Mr. Justice Miller, in delivering the opinion of the court in the former case, says:

"We do not attach importance to the technical mode of proceeding called summons and severance.  We should have held this appeal good if it had appeared in any way by the record that Maverick had been notified in writing to appear, and that he had failed to appear, or, if appearing, had refused to join.  But the mere allegation of his refusal, in the petition of appellant, does not prove this.  We think there should be a written notice and due service, or the record should show his appearance and refusal, and that the court on that ground granted an appeal to the party who prayed for it, as to his own interest.  Such a proceeding would remove the objections made to permitting one to appeal without joining the other, that is, it would enable the court below to execute its decree so far as it could be executed on the party who refused to join, and it would estop that party from bringing another appeal for the same matter.  The latter point is one to which this court has always attached much importance, and it has strictly adhered to the rule under which this case must be dismissed, and also to the general proposition that no decree can be appealed from which is not final in the sense of disposing of the whole matter in controversy, so far as it has been possible to adhere to it, without hazarding the substantial rights of parties interested."

See, also, Grand Island & W. C. R. Co. v. Sweeney (8th Circuit) 103 Fed. 342, 43 C. C. A. 255; Loveless v. Ransom (7th Circuit) 107

Fed. 626, 46 C. C. A. 515; Port v. Schloss Bros. & Co., 149 Fed. 731, 79 C. C. A. 437.

This doctrine is applicable to the case at bar. All of the defendants had asserted claims upon or interest in the judgment which was the subject-matter of controversy. The Harveys, husband and wife, it is true, disclaimed any interest in the fund, on the ground that that interest had been transferred to Tyson Ibbs, and they actively supported Ibbs' claim. The assignment itself was open to attack, and was the subject-matter of attack, upon the ground of collusion and fraud between Harvey and his wife and Ibbs, the brother of Mrs. Harvey. In the original answer of the Harveys, they had asserted the ownership of Harvey and the transfer of his interest in one of the notes to Mrs. Harvey, and her consequent interest in the judgment against the complainant. The court below decreed that neither the Harveys nor Tyson Ibbs had any just claim to any portion of the said judgment. This alleged disclaimer by Harvey and his wife does not estop either of them from the right to appeal from this decree of the court against them. In Hardee v. Wilson, supra, Wilson, as a creditor of one Minor, sought to set aside a conveyance made by Minor to himself as trustee for his wife, and a certain other deed of conveyance made thereafter of the same lands to Hardee, alleging that they were without consideration and made with the intention to hinder and defraud the complainant. Answers were filed by Hardee and by Minor and his wife, and final decree was entered, declaring that the trust deed, in favor of Minor's wife, was void, and that the deed to Hardee could only operate as a security for the payment of a certain sum of money found to be due Hardee in an account stated by a master. From this decree, Hardee appealed, complaining that the decree below was wrong, first, in declaring that the deed to him was merely a security and not absolute in fact as it was in form, and second, if the deed was a security only, in fixing the amount of his debt at too small a sum, and the question was, whether his appeal could be heard in the absence of Minor and his wife, who were codefendants with him in the court below, and who had taken no appeal. It was contended on the part of the appellant, that it was to the interest of Minor and wife to have their deed to Hardee held to be a security merely, and to have the debt thereby secured found to be as small as possible, and that therefore it would be for the interest of Minor and wife to have the decree stand, and that for that reason, Hardee might prosecute his appeal alone.

It was also said that, if this were not so, the Minors had disclaimed any interest. The court said, however, that the disclaimer was nothing more than that the Minors agreed with the position taken by Hardee, which, however, the Circuit Court held to be untenable. The court, therefore, on the ground that the record disclosed that there was no summons and severance, or equivalent proceeding, or due notice to the other defendants, and refusal by them to join in the appeal, dismissed the appeal.

In the present case, the defendants were all before the court. The whole object of the proceeding was to dispose of a single judgment

which defendant, Pegram, had obtained against the American Alkali Company, but which he admitted that he was not entitled to enforce to its full extent for his own benefit. The object of the bill was to ask the decision of the court as to whether any one of these defendants had any interest in this judgment, and if not, to obtain an order that the judgment should be satisfied. The rights of the several defendants, respecting the subject-matter of the litigation, were all finally fixed and determined by the decree of the court, and the closing clause of the decree directed that the judgment in favor of Pegram against the complainant should be satisfied. This certainly makes the decree a decree against Pegram, and requires that he should be a party to the appeal. The finality of that decree against all the defendants could only be determined in an appeal to which all the defendants were parties. No averment or suggestion that any or all the other defendants had knowledge of the appeal taken by Tyson Ibbs, and had opportunity to join therein, if they had chosen so to do, can take the place, under the decisions of the Supreme Court, of a proceeding in severance or a notice in writing appearing by the record to have been duly served upon the other defendants, and the refusal of such defendants to join in the appeal also appearing in the record.

The decree in this case against the several defendants is joint in substance. It deals with the interests of the several defendants in one subject-matter, to wit, the fund arising from the judgment held by Pegram against the complainant company.

A careful examination of the case upon its merits, has convinced us that the appellant has not been aggrieved by the decree of the court below, and we have less reluctance on that account in coming to the conclusion, as we do, that for the reasons stated, the appeal must be dismissed. And it is so ordered.